UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TENEKA HART,

    Plaintiff,

v.                                                                Case No: 6:17-cv-1379-Orl-40DCI

SECRETARY OF THE DEPARTMENT
OF VETERANS AFFAIRS,

    Defendant.
_____/

## ORDER

This cause comes before the Court without oral argument on Defendant's Motion for Summary Judgment (Doc. 24 ("**Motion**")), Plaintiff's Response in Opposition (Doc. 26), and Defendant's Reply (Doc. 28). With briefing complete, the Motion is ripe. Upon consideration of the record as cited by the parties in their respective briefs, the Court finds that the Motion is due to be granted.

**I.    BACKGROUND**

Plaintiff, Teneka Hart, brings this action against Defendant, Secretary of the Department of Veterans Affairs ("**VA**"), asserting discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("**Title VII**"). (Doc. 1).

On October 28, 2009, Plaintiff began working for Defendant at the Orlando VA Medical Center as a medical instrument technician ("**MIT**") in the electrocardiogram department. (*Id.* ¶ 8; Doc. 27, ¶ 1). At all relevant times, Plaintiff worked in the same department. (Doc. 27, ¶ 1). When Plaintiff was hired, she was not a licensed practice nurse ("**LPN**"), lacked an associate's degree, and lacked an intravenous therapy ("**IV**")

certification. (Doc. 24-1, 179:19–180:17). Plaintiff became an LPN in June 2012, received an IV certification in August 2012, and obtained an associate's degree in 2011 or 2012. (*Id.* 172:9–19).

Plaintiff's job duties were detailed in the "Functional Statement" applicable to MITs. (Doc. 27, ¶ 2). At the time she was hired, Plaintiff's job duties were documented in Functional Statement GS-649-S. (Doc. 24-4 ("**First Functional Statement**")). The MIT Functional Statement covering Plaintiff was revised in 2012; Plaintiff signed a copy of the revised statement on July 10, 2012, certifying receipt. (Doc. 24-5 ("**Second Functional Statement**"); Doc. 27, ¶ 3).

The First Functional Statement provides, in pertinent part, "The clinical supervisor defines goals, priorities, and deadlines of the work and helps employee with unusual situation[s], which have no clear precedents." (Doc. 24-4, p. 2). The First Functional Statement also envisions training activities: "Contacts with fellow employees in the section are to give instruction." (*Id.* at p. 3). When asked at her deposition what these provisions meant, Plaintiff conceded that supervisors may assign MITs additional job duties, and MITs may be required to "train other employees." (Doc. 24-1, 156:3–158:2). The Second Functional Statement contains these same duties, and includes duties not listed in the First Functional Statement, such as "entering data, scheduling," and "scheduling . . . patients in the pacemaker clinic." (Doc. 24-5).

The first incidence of alleged discrimination took place between April 2011 and December 2012. (Doc. 1, ¶¶ 9–11). Plaintiff's then-supervisor, Administrative Officer Ms. Moreno-Benton, tasked Plaintiff with managing the Pacemaker Clinic calendar, which was allegedly outside Plaintiff's job description, and for which Plaintiff did not receive

additional compensation. (*Id.*; Doc. 27, ¶ 13).[1] Plaintiff asserts that the "Technician who performed the additional duties before her, Sandra Ramos, a Hispanic female, was given additional pay related to performing the additional duties." (Doc. 1, ¶¶ 12, 39).[2] Moreover, Plaintiff alleges that she was required to train other VA employees on how to manage the Pacemaker Clinic, and that this undertaking was likewise outside Plaintiff's defined job duties and not compensated. (*Id.* ¶ 41).[3] In May 2012, Plaintiff complained to Ms. Moreno-Benton about the alleged uncompensated additional duties. (Doc. 27, ¶ 14). In response, Plaintiff alleges that Ms. Moreno-Benton "changed the [First Functional Statement] Plaintiff was hired under and implemented [the Second Functional Statement] in 2012 (GS 0649-7), adding additional duties so Plaintiff would not be compensated for performing those duties." (*Id.*).[4] Plaintiff maintains that Defendant discriminated against her in assigning additional unpaid duties because she is a black female. (*Id.*; Doc. 24-1, 102:6–15, 160:20–23).

---

[1] Plaintiff attached to her opposition brief a memorandum purporting to establish that Plaintiff was assigned additional duties. (Doc. 26, p. 3; Doc. 26-2). The memorandum was prepared by the Acting Chief Logistics Officer, is addressed to Plaintiff and several other individuals, and provides: "you are hereby assigned the responsibility of overseeing the receipt, review, research, and reporting of products and services recalls and quarantines from office VA National Center for Patient Safety for your Facility and Subject Matter Expert . . . area of assignment." (Doc. 26-2). The memorandum makes no mention of the Pacemaker Clinic calendar duties mentioned in the Complaint.

[2] Ms. Ramos was hired before Plaintiff and was an LPN when Plaintiff was initially hired in 2009. (Doc. 24-1, 176:4–9).

[3] The Complaint seemingly alleges that one of her predecessors, Ms. Ramos, received additional pay for similar training duties. (Doc. 1, ¶¶ 41–42).

[4] Without citing the record, Plaintiff asserts in her opposition brief that "other [MITs] assigned to the unit were not initially assigned the additional duties as the Plaintiff." (Doc. 26, p. 2).

3

Plaintiff next complains that Defendant gave her a diminished rating at her 2013 annual performance review for discriminatory reasons. In December 2012, Plaintiff filed an EEO complaint against Ms. Moreno-Benton alleging discrimination based on the additional unpaid duties assigned to Plaintiff. (Doc. 1, ¶¶ 16, 44; Doc. 24-13; Doc. 27, ¶ 15). On October 28, 2013, Plaintiff received a "Fully Successful" annual performance evaluation. (Doc. 1, ¶¶ 18, 45; Doc. 24-9; Doc. 27, ¶ 16). Defendant's rating system involves assigning scores to various elements of an employee's work and then combining those evaluations into an overall rating.[5] On October 29, 2013, Plaintiff challenged the "Fully Successful" rating, which was subsequently upgraded to "Excellent" by the Acting Chief of Medical Services. (Doc. 24-1, 87:2–5; Doc. 24-14, 14:15–15:16; Doc. 27, ¶ 17).

---

[5] Under Defendant's performance review system, employee performance is broken down by separating various "elements" and assigning those elements "levels of achievement." (Doc. 24-9; Doc. 27, p. 4 n.2). As to each element, employees are judged either "Unacceptable," "Fully Successful," or "Exceptional." (Doc. 24-9; Doc. 27, p. 4 n.2). The initially-segregated achievement levels are then combined and turned into an overall rating, as follows:

- *Outstanding* – achievement levels for all elements are designated as "Exceptional."

- *Excellent* – achievement levels for all critical elements are designated as "Exceptional." Achievement levels for noncritical elements are designated as at least "Fully Successful." Some, but not all, noncritical elements may be designated as "Exceptional."

- *Fully Successful* – achievement level for at least one critical element is designated as at least "Fully Successful." Achievement levels for other critical and noncritical elements are designated as at least "Fully Successful" or higher.

- *Minimally Satisfactory* – achievement levels for all critical elements are designated as at least "Fully Successful." However, the achievement levels for one or more noncritical elements are designated as "Unacceptable."

- *Unacceptable* – the achievements levels for one or more critical elements is designated as "Unacceptable."

(Doc. 27, p. 4 n.2).

Plaintiff received an "Outstanding" performance evaluation in 2012[6] and maintains that her diminished 2013 rating was retaliation for her EEO complaint. (Doc. 1, ¶¶ 43–47; Doc. 24-1, 100:6–16; Doc. 27, ¶ 16). Plaintiff maintains that the 2013 review "negatively affected her ability to receive a performance bonus." (Doc. 1, ¶ 46). In December 2013, Plaintiff filed a second EEO complaint in response to the initial 2013 "Fully Successful" rating. (Doc. 24-15; Doc. 27, ¶ 17).

Plaintiff alleges that she again faced retaliation when she was denied advance sick leave. (Doc. 1, ¶¶ 48–51). On May 14, 2015, Plaintiff requested advance sick leave to excuse her absence from work while she received medical treatment following a car accident. (*Id.* ¶ 23; Doc. 24-1, 110:14–111:10). On May 28, 2015, Plaintiff again sought advance sick leave because of issues Plaintiff faced relating to a problematic pregnancy. (Doc. 1, ¶ 23). Plaintiff asserts that her then-supervisor declined her leave request and "declare[d] the Plaintiff to be AWOL [absent without leave]" in retaliation for Plaintiff's EEO complaints. (*Id.* ¶¶ 28, 51; Doc. 24-1, 111:6–10). Conversely, Plaintiff contends that Defendant approved an advance sick leave request from Kerri Griffin, a white female. (Doc. 1, ¶ 27; Doc. 27, ¶ 18).

Defendant urges that the initial denials of Plaintiff's requests for sick leave were a product of standard policies and were ultimately reversed. Advance sick leave requests must be approved by the Medical Center Director and are marked AWOL until the Director grants or denies the request. (Doc. 24-18; Doc. 27, ¶ 19). In Plaintiff's case, she requested advance sick leave through her supervisor, who lacked jurisdiction to resolve the request.

---

[6] Plaintiff's 2012 performance review initially yielded an "Excellent" rating, but was changed to "Outstanding" after Plaintiff protested to management. (Doc. 24-1, 86:13–87:1; Doc. 24-14, 11:5–14:14).

5

(Doc. 24-18; Doc. 17, ¶ 19). Thus, after being initially marked AWOL, Plaintiff's leave request was retroactively granted, and she was paid for the time missed. (Doc. 24-1, 116:4–12; Doc. 27, ¶ 20). Plaintiff filed EEO complaints in connection with the leave requests but withdrew them after they were granted. (Doc. 24-1, 118:6–119:24; Doc. 24-2; Doc. 27, ¶ 20).

Plaintiff contends she again faced discriminatory retaliation in connection with her 2016 performance review. In 2016, Plaintiff received a "Fully Successful" performance rating. (Doc. 1, ¶¶ 52–56; Doc. 27, ¶ 21). Plaintiff maintains that this performance rating constituted retaliation for her protected EEO activity and prevented her from receiving a performance bonus. (Doc. 27, ¶ 21). The supervisor who performed Plaintiff's 2016 performance review submitted an affidavit explaining his rationale for the "Fully Successful" rating. (Doc. 24-19 ("Ms. Hart did not go above and beyond her job duties for this rating period.")).

Based on these events, Plaintiff filed this lawsuit alleging four Counts under Title VII: disparate treatment discrimination based on being assigned additional duties without compensation (Count I); retaliation based on 2013 performance evaluation (Count II); retaliation based on Defendant's denial of Plaintiff's sick leave requests (Count III); and retaliation based on 2016 annual performance evaluation (Count IV). (Doc. 1). Defendant moves for summary judgment on all Counts. (Doc. 24).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S. at 322–23. Also, "[t]he court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam).[7]

---

[7] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

## III. DISCUSSION

### A. Count I

Defendant moves for summary judgment on Count I, arguing that Plaintiff did not suffer an adverse employment action, has failed to identify a similarly situated comparator, and has not established pretext.

Title VII bars employers from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff lacks direct evidence of discrimination, the plaintiff may show discrimination through circumstantial evidence, using the *McDonnell-Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). To survive summary judgment, Plaintiff must first establish a *prima facie* case of disparate treatment discrimination by showing with evidence that: "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees more favorably; and (4) she was qualified to do the job." *McCann*, 526 F.3d at 1373 (quoting *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). If Plaintiff clears this hurdle, the burden shifts to Defendant, who must provide a legitimate, nondiscriminatory reason for its conduct. *Id.* If Defendant meets this burden, Plaintiff must then establish that Defendant's proffered reasons are pretextual, and the actual reasons were discriminatory. *Id.*

*1. Plaintiff Did Not Suffer an Adverse Employment Action*

Defendant initially, and successfully, challenges the second element necessary to establish a *prima facie* case of disparate treatment: adverse employment action. Of course, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). To satisfy this element, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* at 1239. Moreover, the proffered adverse action "must at least have a tangible adverse effect on the plaintiff's employment." *Id.*

Plaintiff maintains that she suffered adverse action insofar as she was tasked with duties outside her job description—managing the Pacemaker Clinic calendar and training co-employees—but did not receive additional compensation for these undertakings. (Doc. 1, ¶ 36–42). Plaintiff has not demonstrated adverse action because these "additional duties" were within Plaintiff's job description as defined by both the First and Second Functional Statements. The duty for MITs to train other employees is clearly prescribed in Section 5 of the First Functional Statement and Section VI of the Second Functional Statement. (Doc. 24-4, p. 3 ("Contacts with fellow employees in the section are to give instruction."); Doc. 24-5, p. 4 (same)). And though the duty to manage the Pacemaker Clinic calendar was not explicitly set out in the First Functional Statement, it is reasonably covered under the clinical supervisor's discretion to assign tasks. (*See* Doc. 24-4, p. 2). Indeed, at her deposition, Plaintiff admitted that managing the Clinic calendar and training employees were within her job description. (Doc. 24-1, 156:3–158:2). Accordingly, the Court finds that Defendant did not subject Plaintiff to adverse employment action by

9

requiring her to complete tasks within her job description for no additional pay. *See Davis*, 245 F.3d at 1239.

Plaintiff asserts that Defendant's actions "affected compensation," and therefore constitute adverse employment action under *Gillis v. Georgia Department of Corrections*, 400 F.3d 883 (11th Cir. 2005). (Doc. 26, p. 6). In *Gillis*, the defendant found the plaintiff only "met expectations" on her annual performance review for discriminatory reasons, disqualifying her from receiving a $912.36 annual pay raise. 400 F.3d at 888. Here, Plaintiff has failed to identify any evidence in the record showing that performing the duties at issue entitled her to additional pay. *See HRCC*, 703 F. App'x at 816–17. Instead, Plaintiff incorrectly asserts that these duties were outside her job description and claims, without identifying any supportive evidence, that her predecessor was paid for performing similar activities. Therefore, *Gillis* is inapposite, and Plaintiff has failed to establish adverse employment action. Accordingly, Defendant is entitled summary judgment as to Count I. *See Celotex*, 477 U.S. at 322–23.

### 2. *Plaintiff Has Not Identified a Similarly Situated Comparator*

The Court next addresses one additional basis for granting Defendant's summary judgment motion as to Count I: Plaintiff's failure to identify a similarly situated comparator. Plaintiff avers that Sandra Ramos is a valid comparator, in that she was a non-black MIT and received additional pay to manage the Pacemaker Clinic calendar. (Doc. 1, ¶¶ 12, 39).[8]

---

[8] In her brief opposing summary judgment, Plaintiff now submits that William Kingsley and Lauri Castelli are also valid comparators. (Doc. 26, pp. 7–8). The Court disregards this assertion, however, because the Complaint did not aver either Kingsley or Castelli as comparators. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief

"A 'comparator' is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff 'in all relevant respects.'" *Coar v. Pemco Aeroplex, Inc.*, 372 F. App'x 1, 2 (11th Cir. 2010) (per curiam) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)). To avoid second-guessing reasonable employer decisions, comparators must be "nearly identical" to the plaintiff. *Wilson*, 376 F.3d at 1091.

Sandra Ramos is not a valid comparator to Plaintiff with respect to Count I of the Complaint. Critically, Ms. Ramos was an LPN when she was hired and performed the Pacemaker Clinic calendar duties while Plaintiff was not. (Doc. 24-1, 172:9–19, 176:4–9). Plaintiff only became an LPN at the end of the time period in which she maintained the calendar. (*Id.* 172:9–19; Doc. 27, ¶ 13). In her deposition, Plaintiff acknowledged the significance of the LPN status, noting: " . . . you asked me how could they give me a higher salary. And so I'm letting you know that, *since now I'm an LPN, they're on a higher pay grade*. That's how they can give me my salary." (Doc. 24-1, 180:18–23 (emphasis added)). Moreover, Ms. Ramos had worked for Defendant for a longer period, further contributing to the difference in pay. (*Id.* 33:5–12). For these reasons, Ms. Ramos' status as a VA employee was not "nearly identical" to Plaintiff's, and she is not a valid comparator. *See Wilson*, 376 F.3d at 1091.

### B. Counts II and IV

Defendant also moves for summary judgment as to Counts II and IV, which both level retaliation claims against Defendant based on annual performance reviews.

---

opposing summary judgment."). Moreover, neither Kingsley nor Castelli received additional pay to manage the Pacemaker Clinic calendar or train other employees, so the comparison is too tenuous. *See infra* discussion p. 11.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

### 1. *Plaintiff Did Not Suffer an Adverse Employment Action*

Plaintiff fails to establish the performance reviews constitute adverse employment action. The ratings in question are the 2013 rating (which was initially "Fully Successful" but ultimately raised to "Excellent") and the 2016 rating (Fully Successful). (Doc. 27, ¶¶ 16–17, 21).

The adverse employment action threshold is lower for retaliation claims than for disparate treatment discrimination claims. *Crawford v. Carroll*, 529 F.3d 961, 971 (11th Cir. 2008). To support a retaliation claim, the challenged action must be "materially adverse," meaning it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *Crawford*, 529 F.3d at 973–74. Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67.

Where an employee receives a negative performance review that directly impairs employee compensation, the "materially adverse" action requirement is met. For instance, in *Crawford*, the Court found that the plaintiff "suffered a materially adverse action in the form of the unfavorable performance review she received (that affected her ability for a

merit pay increase) after she complained of discrimination." 529 F.3d at 974. Conversely, employee performance reviews that do not affect benefits, promotional opportunities, or lead to discipline are generally not actionable. *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 715 (11th Cir. 2013) (per curiam).

Here, Plaintiff has not shown that the 2013 or 2016 performance reviews would dissuade a reasonable worker from reporting discrimination. *See Crawford*, 529 F.3d at 973–74. Critically, Plaintiff offers no proof that either a Fully Successful or Excellent performance rating disentitle the recipient from receiving a bonus or pay raise. Nor has she shown that an employee who receives an Outstanding rating is even more likely to get a bonus or pay raise than an employee rated Fully Successful or Excellent. Instead, Plaintiff baldly asserts throughout the Complaint and summary judgment opposition brief that the ratings prevented Plaintiff from receiving "work related bonus and performance incentive." (Doc. 1, ¶¶ 21, 34, 46, 55; Doc. 26, pp. 3–4). Further, Plaintiff's complained-of performance reviews were objectively positive. As the ratings' titles suggest, Fully Successful and Excellent ratings are only given to employees that successfully achieve their work objectives. (Doc. 27, p. 4 n.2). A reasonable employee in Plaintiff's position would not be dissuaded from reporting discrimination by virtue of receiving either Fully Successful or Exceptional performance reviews. *See Barnett*, 550 F. App'x at 715 (finding no adverse employment action where an employee was reprimanded, received a negative evaluation, and was denied a vacation request because these actions did not affect "any future pay raise or his future job status in any way"); *Byrd v. Auburn Univ. Montgomery*, 268 F. App'x 854, 856 (11th Cir. 2008) (per curiam) (finding no adverse

employment action where an employer gave an employee a "commendable" performance rating and 8.6% raise); *cf. Crawford*, 529 F.3d at 974.

Plaintiff fails to identify any evidence supporting a reasonable conclusion that she suffered adverse employment action as to either Count II or Count IV.[9] Therefore, Defendant is entitled to summary judgment on both Counts. *See Celotex*, 477 U.S. at 322–23.

## C. Count III

The Court finally turns to Count III. Defendant moves for summary judgment on Count III, which avers a retaliation claim based on Defendant initially denying Plaintiff's advance sick leave requests, even though those requests were retroactively granted and Plaintiff was paid for the missed time. (Doc. 27, ¶¶ 18–20).

Count III fails for lack of adverse employment action. To show adverse action on Count III and avoid summary judgment, Plaintiff must offer some evidence showing that she suffered "materially adverse" action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. She has made no such showing. Plaintiff's sick leave request was initially denied, and she was marked AWOL because of Defendant's policy of denying such requests until they could be adjudicated by the Medical Center Director. (Doc. 27, ¶ 19). Here, after Plaintiff's

---

[9] As an aside, the record does not support Plaintiff's contention that her 2013 performance review was retaliation for protected conduct. If anything, Plaintiff's ultimate 2013 "Excellent" performance rating was inflated because of Defendant's fear that giving Plaintiff her deserved "Fully Successful" rating would prompt litigation. (Doc. 24-14, 11:18–11, 14:21–25 ("The acting chief of medicine stated that because he did not want EEO and the union issues that [Plaintiff] has involved [management] in [on] multiple occasions, he felt—he wasn't going to sign [the Fully Successful performance review].")).

14

request reached the appropriate decisionmaker, it was granted and she was paid for the requested leave. (*Id.* ¶ 20). These actions fall woefully short of the "materially adverse" standard set out in *Burlington*. A reasonable employee in Plaintiff's shoes would not have been dissuaded from reporting discrimination because Defendant initially denied, then retroactively granted, advance sick leave requests. *See Burlington*, 548 U.S. at 68. Defendant is therefore entitled to summary judgment on Count IV. *See Celotex*, 477 U.S. at 322–23.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, Secretary of the Department of Veterans Affairs, and against Plaintiff, Teneka Hart, as to Counts I, II, III, and IV.

3. Thereafter, the Clerk is **DIRECTED** to terminate any pending motions and deadlines and close the case.

**DONE AND ORDERED** in Orlando, Florida on January 30, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

15